David SIERRA, Jr., Petitioner-Appellant,

v.

The GOVERNMENT OF the CANAL ZONE, Respondent-Appellee.

No. 76–1369.

United States Court of Appeals, Fifth Circuit.

Jan. 27, 1977.

---

Carlos C. LaRoche (Court-appointed), Michael D. Paulson, San Francisco, Cal., Henry L. Newell, Balboa, Canal Zone, for petitioner-appellant.

Frank J. Violanti, U. S. Atty., Wallace D. Baldwin, Asst. U. S. Atty., Balboa, Canal Zone, for respondent-appellee.

Before MORGAN and GEE, Circuit Judges, and HUNTER, District Judge.[*]

LEWIS R. MORGAN, Circuit Judge:

Appellant David Sierra, Jr., was charged by information with first degree murder[1] and possession of marijuana with intent to distribute.[2] Sierra pleaded guilty in federal district court to the marijuana charge and to second degree murder. He subsequently moved to vacate his sentences,[3] and, the district court denied the motion. We reverse. The district court's unmeticulous questioning of Sierra about the accused's understanding of the nature of the charges against him did not satisfy Rule 11 of the Federal Rules of Criminal Procedure.

## I. The Value of Rule 11.

█ Rule 11, which outlines the procedure to be used in accepting guilty pleas in federal court, can be an effective tool in the fair and efficient administration of the criminal law. The rule serves two purposes. First, it assists the district court in making the constitutionally required determination that the guilty plea is voluntary, and second, it produces a complete record showing that the ingredients of a voluntary plea were present. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Monroe v. United*

States, 463 F.2d 1032, 1035 (5th Cir. 1972). A record created by scrupulous adherence to the Rule enables expeditious disposition of subsequent attacks on the plea. *Monroe, supra.* On the other hand, unexacting Rule 11 hearings cause doubt and promote post-conviction assaults on the plea. *Id.*

## II. The Rule 11 Inquiry Regarding Understanding of the Charges.

█ A plea of guilty is an admission of all the elements of the crime. *McCarthy, supra; United States v. Bendicks*, 449 F.2d 313 (5th Cir. 1971). Thus, Rule 11 mandates that the district court personally address the defendant before accepting the plea to determine that the defendant understands "the nature of the charge to which the plea is offered." The inquiry must be a careful one. Routine questions on the subject of understanding are insufficient, and a single response by the defendant that he "understands" the charge gives no assurance or basis for believing he does. *Dorrough v. United States*, 385 F.2d 887, 890 (5th Cir. 1967), *adopted en banc*, 397 F.2d 811 (5th Cir. 1968), *cert. denied*, 394 U.S. 1019, 89 S.Ct. 1637, 23 L.Ed.2d 44 (1969).

## III. The Murder Charge Against Sierra.

Sierra came before the trial court on three occasions before pleading guilty. At the first hearing, on December 4, 1973, the court did little more than appoint counsel. No inquiry was made about Sierra's understanding of the charges against him. During the second hearing, which took place on December 7, the court recited to Sierra the informations charging him with first degree murder and possession of marijuana with intent to distribute.[4] Again, no colloquy

[*] Senior District Judge for the Western District of Louisiana, sitting by designation.

1. C.Z.Code tit. 6, § 1183(a).

2. 21 U.S.C. § 841(a).

3. 28 U.S.C. § 2255.

4. THE COURT: All right. In the case of possession with the intention to distribute marijuana, it is short so I will read it to you. This case is number 6625 and it says:

'The United States Attorney charges: THAT 'On or about October 5, 1973, in the Balboa Division of the District of the Canal Zone, David Sierra, Jr., did knowingly and intentionally possess (with intent to distribute for remuneration) approximately twenty (20) pounds of marijuana, a Schedule I controlled substance, not a narcotic drug,

occurred between Sierra and the court regarding Sierra's understanding of the nature of the charges. Finally, on December 14, Sierra appeared before the court and entered pleas of guilty to two charges—*second* degree murder and possession of marijuana with intent to distribute.[5] At this proceeding the court did question Sierra briefly regarding Sierra's understanding of the charges:

[THE COURT:] Now first of all, do you fully understand the charges against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you entering these pleas of guilty freely and voluntarily?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you entering these pleas of guilty because you did do as charged in these Informations, one, kill Ovidio de Jesus Marin, a human being; and two, possess approximately 20 pounds of marijuana in violation of the law?

THE DEFENDANT: Yes, Your Honor.

The court asked Sierra other questions before accepting the pleas, but the portion of the record quoted above shows the whole of the inquiry into understanding of the charges.

■ We think the court should have done more. The court referred to the murder charge as being embodied in the information read at the December 7 hearing, but that information charged Sierra with *first* degree murder. Moreover, in its questioning the court gave only one element of second degree murder—the act of killing. No inquiry at all was made regarding intent to kill. When *mens rea* is such a crucial element of an offense, the district court must determine, on the record by personally addressing the defendant, that the defendant understands the nature of the mental element. *McCarthy, supra; cf. Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (failure to apprise defendant of nature of mental element of second degree murder) (habeas corpus).

## IV. The Marijuana Charge Against Sierra.

■ The court's parsimonious colloquy with Sierra also fell short of the Rule 11 standard in the case of the marijuana charge. At the December 7 hearing, the court read to Sierra the information charging him with knowing possession of marijuana "with intent to distribute for remuneration." The court did not ask whether Sierra understood the nature of the charge. A week later, during the hearing at which Sierra pleaded guilty, the court gave an incomplete paraphrase of the charge: "Are you entering [this guilty plea] because you did as charged in these informations . . two, possess approximately 20 pounds of marijuana in violation of the law?" Sierra responded in the affirmative. No further effort was made to ascertain whether Sierra understood the marijuana charge. The

in violation of 21 United States Code, 841(a), paragraph (1).'
This is signed by Lester Engler, United States Attorney, on the 26th day of November, 1973.
MR. SHERIDAN: As to that, we are ready to plead and the indicated plea is guilty and now let's pass to '25.
THE COURT: I didn't hear what you said.
MR. SHERIDAN: Now let's pass to '25, the murder charge.
THE COURT: All right. Now in case number 6625 you are accused also under Information No. 6625:

'The United States Attorney charges: THAT 'On or about October 30, 1973, in the Balboa Division of the District of the Canal Zone, David Sierra, Jr., did, at George Green Park, within the Canal Zone, willfully, unlawfully, feloniously, with malice aforethought, kill and murder, Ovidio de Jesus Marin R. (Ramirez), a human being, in violation of 6 Canal Zone Code 1183, paragraph (a).'
This information was signed on the 26th day of November, 1973 by Lester Engler.

**5.** The record shows that the government agreed to reduce the murder charge to second

information was not reread to give Sierra an opportunity to respond.[6]

Sierra's affirmative answer to the question posed by the court certainly did not show an understanding of the information. The "intent to distribute" element, so crucial to the federal offense,[7] was not included at all in the colloquy, and the misleading content of the court's question would make hazardous any reliance on the December 7 reading of the charge to Sierra.

The court could have required Sierra to acknowledge his understanding of the marijuana charge at the December 7 proceeding or could have reread the information during the December 14 colloquy or could have stated the substance of the information fully and accurately in the questioning of Sierra. None of these was done, and as a result Rule 11's purpose of assuring a complete record of the determination of the plea's voluntariness was frustrated.

## V. Ineffective Assistance of Counsel.

 Sierra contends that the public defender who represented him at the time of

his guilty pleas did not provide effective assistance. Ineffective assistance of counsel can be a basis for impeaching a guilty plea to the extent that it bears on the issues of voluntariness and understanding. *Lee v. Hopper*, 499 F.2d 456, 462 (5th Cir.), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 633, 42 L.Ed.2d 650 (1974). The record does raise some serious questions regarding the adequacy of representation here;[8] however, since we have decided that Sierra must be allowed to plead anew on the basis of noncompliance with Rule 11, we need not reach the issue of counsel's adequacy.[9] We note the argument only because it underscores the value of meticulous personal questioning of the accused by the court regarding the accused's understanding of the charges. A careful on-the-record inquiry by the court can serve to lessen the force of any subsequent claim that counsel did not do a good enough job in advising the accused.

## VI. Right to be Charged by Indictment.

 We need reach only one other of Sierra's points. He contends that he had a

---

degree murder in exchange for the plea of guilty.

6. The court asked whether Sierra's counsel waived formal reading of the informations and counsel replied in the affirmative. Allowing counsel to waive Rule 11 protections in this way would undermine the Rule's purpose of developing fully, on the record, the components of a voluntary, knowing plea of guilty.

7. Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess *with intent to* manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess *with intent to* distribute or dispense, a counterfeit substance.

21 U.S.C. § 841(a) (emphasis added).

8. The record indicates that counsel did not open a file in this case, did not make any motions to discover evidence, only perfunctorily investigated the possibility that Sierra's confession could be suppressed, failed to interview the only witness to the alleged killing, and may have had insufficient familiarity with *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), to be able to provide rea-

sonably effective advice regarding the likelihood of imposition of the death penalty.

On the other hand, the record suggests that the shallowness of the investigation may have been prompted by Sierra's insistence upon pleading guilty. Moreover, the government contends that counsel heard enough at Sierra's preliminary hearing to convince him that a guilty plea was the best course. And, with respect to *Furman*, the record is certainly susceptible of the interpretation that counsel knew the substance of the holding, but could not recall the case's name.

It is worthy of note that Sierra did not assert at the time of his guilty pleas or his § 2255 hearing and does not assert on this appeal any substantial basis for doubting his guilt.

9. Our hesitancy to reach this issue is prompted in part by the confusion that attended discussion of the point at oral argument. Counsel for the government sought to argue that the representation of Sierra did not fall to the level of a farce or a mockery of justice. This circuit's well-established standard for effectiveness of counsel is that counsel must render reasonably effective assistance. The farce or mockery standard, utilized elsewhere, is only one element of the test for reasonably effective assistance. *E. g., Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974).

constitutional right to be charged by indictment rather than information. This court has already decided the issue adversely to appellant's position. *E. g., Canal Zone v. Griffith*, 459 F.2d 1036 (5th Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 171, 34 L.Ed.2d 138 (1972).[10]

### VI. Conclusion.

Because the district court failed to comply with Rule 11 in accepting Sierra's guilty pleas, Sierra must be allowed to plead anew. *McCarthy, supra.*

REVERSED.

---

10. The ABA Code of Professional Responsibility, EC 7–23, states in part:

Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so . . .

We note that Sierra's appellate counsel did not cite *Griffith* or any other contrary Fifth Circuit authority with respect to the indictment issue. The government did bring *Griffith* to our attention in its appellee's brief. We trust that Sierra's counsel did not intentionally omit the contrary authority.